*Southern District*

## SIGNE E. MANN AND THOMAS MANN
### v.
### BEVERLY A. MAHONEY, d/b/a
### REBEV BEAUTY SALON

*Present*: Nash, P. J., Cox & Sgarzi, JJ.

Case tried to *Colten, J.* in the District Court of Southern Norfolk. No. 15680. Remand No. 182.

*Sgarzi, J.* Although this action is described in the report as an action of tort, the *first count* in the declaration sounds in contract since it alleges breach of an undertaking by the defendant to properly dress the hair of the plaintiff Signe E. Mann and to apply a preparation called "Color-Kist" as the result of which certain injuries were sustained. The *second count* alleges that the said injuries were sustained as the result of the negligence of the defendant in the application of the said preparation. A *third count* alleges consequential damages sustained by the plaintiff Thomas Mann, husband of Signe E. Mann. Wherever mention is hereinafter made of the plaintiff it will refer to Signe E. Mann. The answer is a general denial, allegation of contributory negligence, a denial of warranty and assumption of risk.

*There was evidence that* on February 11, 1961 the plaintiff went to the business establishment of the defendant, a professional hair dresser, duly registered and licensed as re-

quired by law, for the purpose of obtaining a hair shampoo and wave set. In the course of conversation the defendant suggested a color rinse, stating that "it wouldn't do any harm," and the plaintiff agreed to have this done. The preparation used by the defendant for the color rinse was known as "Color-Kist Natural Shade Toner Shampoo" and came in a bottle which contained upon its label the following instructions:

"For professional use only. Dilution instructions: Pour 12 oz. warm water into 16 oz. dispenser and add 4 oz. concentrate. Shake Well. Important—Color-Kist imparts color and accents natural hair shades without peroxide or developer. However, like the purest foods or cosmetic items it may produce allergic reaction in a susceptible individual, and therefore it carries no warranty, express or implied, as to effects or results of its use on the few who may be allergic to it. If there is any evidence of an allergic irritation after using Color-Kist Shampoo, discontinue its use. Don't permit Color-Kist Shampoo to get into eyes or contact the area around them."

The defendant had used this preparation on approximately twenty prior customers without ill effect and in her application of the substance to the plaintiff followed the instructions carefully. Upon completion of the services rendered to the plaintiff she showed no sign of irritation or discomfort but about three hours later she became aware of an itching sensation which continued through the night and the following morning she had

noticeable swelling, rash and inflammation about the face and scalp which required medical attention and persisted for more than a month.

There was further evidence from the defendant of a standard of care expected of and followed by hairdressers in the preparation and application of dyes to hair which involved a 24 hour patch test, so called. This consisted of the testing of a small area of skin behind the ear of a prospective customer 24 hours before the intended application and if redness or rash resulted, it indicated an allergy and the treatment would not be given. *No patch test was given the plaintiff in this case.*

At the close of the evidence the defendant presented eight requests for rulings of law, all of which were denied by the judge who made a finding for the plaintiff on Count 2 of her declaration. He also made the following special findings of fact:

> "I further find that the plaintiff was not aware of the dangerous nature of the preparation used whereas the defendant had been informed by the manufacturer of the liquid in what proportions the concentrate was to be diluted with water before applying; that the defendant did not exercise the degree of skill and care which she engaged herself to exercise when she invited the public to patronize her place of business and was therefore negligent".

Most of the defendant's requests for rulings of law are addressed to the issue of breach of contract contained in Count 1 of the declaration but since the judge found for the

defendant on this count she is not aggrieved by the denial of these requests. G. L. c. 231, §108.

The remaining requests deal with the sufficiency of the evidence to support a finding of negligence. The issue presented is that in the view of the evidence most favorable to the plaintiff, a finding for the defendant was required. However, if the judge's finding can be supported on any reasonable view of the evidence with all rational inferences of which it is susceptible it cannot be disturbed. *Barttro v. Watertown Sq. Theatre,* 309 Mass. 223; *Castano v. Leone,* 278 Mass. 429.

This is not a case involving the sale of a packaged cosmetic or proprietary medicine where recovery for an injury resulting from its use must be based upon breach of warranty of merchantability. In such cases the plaintiff must prove that the product would be dangerous or harmful to a significant number of users, or that it was unfit for use by a normal person. *Casagrande v. F. W. Woolworth Co.,* 340 Mass. 552; *Jacquot v. Wm. Filenes Sons Co.,* 337 Mass. 312.

In this case we have in Count 2 of the plaintiff's declaration an allegation that injury was caused to the plaintiff by the negligent application of a product by the defendant, a professional hairdresser, without taking the precautions called for by the warning of the manufacturer.

The duty owed by the defendant to the plaintiff as a paying customer was to use

that degree of care which was consistent with the nature of the contract or undertaking. The relationship of the parties was analagous to that of a common carrier and a passenger for hire. *Garner v. Boston El. Ry.*, 204 Mass. 213; *Carson v. Boston El. Ry.*, 309 Mass. 32.

The customer has a right to rely on the professional skill and competence of the operator of a beauty parlor and the right to expect that at the very least, ordinary and usual precautions be taken to prevent injury or harm to the person. The nature of the activity is such that close physical contact is involved and the means, methods and control are entirely in the hands of the operator.

██ The instructions appearing on the bottle containing the product used by the defendant and addressed to her as a professional operator constituted a clear warning that the substance could be injurious to certain persons. Did, then, the defendant owe to the plaintiff the duty to determine whether the plaintiff was one of such persons? In view of the defendant's own testimony that a simple test was recognized and generally used in the trade to make this determination, we are of the opinion that the failure to use it could be regarded as evidence of negligence. *Barnett v. Roberts*, 243 Mass. 233; *Gavin v. Kluge*, 275 Mass. 372.

██ With regard to the defense of assumption of risk, the evidence did not require a finding that the plaintiff in submitting herself to the treatment assumed the risk that the

defendant would be negligent by not acting within reasonable requirements or due care. *Gavin v. Kluge,* 275 Mass. 372; *Manter v. New Bedford etc. Steamboat Co.,* 246 Mass. 551.

We find no prejudicial error in the denial of the defendant's requests for rulings of law and the report should be ordered dismissed.

Sykes & Sykes, of Norwood, for the Plaintiff.

Louis W. McDonough, of Stoughton, for the Defendant.